CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 23 2013

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO<br><br>Plaintiff,<br><br>v.<br><br>TEAM CARRIERS INCORPORATED,<br><br>Defendant. | Civil Action No. 7:13cv00358<br><br>**MEMORANDUM OPINION**<br><br>By: Samuel G. Wilson<br>United States District Judge |

As a consequence of competitive bidding, Team Carriers Inc., ("Team Carriers" or "the Company") a Covington, Virginia corporation, which is unionized, lost its contract to provide Mead Westvaco ("MW") local trucking services and now plans to sell to the successful competitive bidder vehicles and trailers it no longer needs. This is an action by Team Carriers' union, the United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO ("USW" or "the Union") pursuant to Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a) to order expedited arbitration of a pending grievance concerning the sale and to restrain the sale until there is a decision by the arbitrator. The court enjoins the proposed sale to the successful bidder or its agents pending arbitration (conditioned on USW timely posting a bond in the amount of $250,000) but denies USW's motion to compel expedited arbitration. The opinion that follows stands as this court's findings of fact and conclusions of law.

# I.

The Company has provided various local trucking services to MW in Covington, Virginia since 1997 and has been a party to a collective bargaining agreement (the "CBA") with the Union since that date. The Union is the exclusive collective-bargaining representative of the Company's bargaining unit employees, and the current CBA runs for three years from its effective date, August 26, 2011.

The CBA contains grievance and arbitration procedures which apply to "differences" arising out of the interpretation or application of the CBA's provisions, and the arbitrator's decision is "final and binding." It also contains the following successorship language:

> The Company agrees that if during the life of this Agreement it discontinues operations, sells, leases, transfers or assigns the operations covered by this Agreement, it shall inform the purchaser, lessee, transferee or assignees of the exact terms of this Agreement and shall make the sale, lease, transfer or assignment conditional upon the purchaser, lessee, transferee, or assignee, assuming all the obligations of the Agreement until it's expirations [sic.] date and treating the affected employees of the Bargaining Unit in accordance with the terms of this Agreement.

Earlier this year, MW informed the Company of its intention to submit its need for local trucking services to competitive bidding and, on June 25, 2013, apprised the Company that the Company's bid was unsuccessful and that MW had awarded the trucking service contract to Garten Trucking. The Company's trucking service business with MW, which will end on August 26, 2013, represents a substantial portion of its income, and as a consequence of losing that business, the Company will be laying off its 59 bargaining unit employees. The Company has indicated that it owns some equipment that it no longer needs, including various trucks and trailers which it asserts have a value of "$250,000 at most," which it intends to sell to Garten Trucking. The Union responded by filing a grievance on June 28, 2013, based upon the

2

Company's failure "to require" Garten Trucking "to accept the collective bargaining agreement" in accordance with the successorship provision of the CBA. It also sought to expedite arbitration. Though the Company has agreed to arbitrate the dispute, it has declined to expedite arbitration claiming that it has no relationship with Garten, that Garten is not its successor but simply the successful bidder, and that the Company is not selling its operations to Garten but simply a few trucks and trailers which the Company no longer needs.

Unsuccessful in its efforts to expedite arbitration, the Union filed suit in this court pursuant to § 301 on August 1, 2013, seeking to compel expedited arbitration and to enjoin the Company from selling or transferring assets pending arbitration. On August 8, 2013, the Union filed supporting declarations and gave notice of its intent to seek a preliminary injunction on August 16, 2013. The Company responded with a memorandum in opposition and a declaration supporting its opposition. At the scheduled August 16, 2013, hearing, the parties produced no evidence beyond the declarations and documents they had already submitted and counsel for the Union represented that he had talked with counsel for the Company and that he thought that the case could be submitted on the declarations.

## II.

The Company claims that it is not selling its operations but simply a few trucks and trailers; that the Union's grievance, therefore, is not subject to arbitration; and that the Union has not otherwise shown it is entitled to injunctive relief. At the risk of oversimplification, the Union in effect argues that the questions of arbitrability, and the court's authority to issue an injunction, distill to whether the issue *may* be arbitrable, whether the position it will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor, and whether an

injunction is necessary to protect the arbitral process. Though the court may not entirely agree with the Union's formulation of the issues, it finds the Union has raised a substantial question of arbitrability and otherwise satisfied the requirements for limited preliminary injunctive relief (though not all of the relief the Union has requested), conditioned on the timely posting of a bond in the amount of $250,000.

To preserve the status quo pending arbitration of labor disputes, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 empowers federal courts to enjoin parties to a collective bargaining agreement from engaging in conduct that would otherwise render the arbitral process a hollow formality. See Lever Brothers Co. v. International Chemical Workers Union, Local 217, 554 F.2d 115 (4th Cir. 1976). That authority is a narrow exception to the Norris-La Guardia Act's anti-injunction provisions, 29 U.S.C. §§ 101-115.[1] When a union seeks an injunction in a labor dispute, "that exception applies only where an employer's conduct presents compelling circumstances, ... such that without the injunction a subsequently rendered arbitral award could not return the parties substantially to the *status quo ante*." District 17, United Mine Workers of America v. A&M Trucking Inc., 991 F.2d 108, 111 (4th Cir. 1993) (internal citations and quotations omitted).

A court must first resolve the question of arbitrability before considering the usual standards that govern the issuance of preliminary injunctive relief, and if "it cannot be said with positive assurance that the arbitration clause [is] not susceptible of an interpretation that [covers] the asserted dispute, "that issue is the province of the arbitrator. See Lever Brothers, 554 F.2d at

---

[1] Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235 (1970) created a narrow exception to the Norris-LaGuardia's anti-injunction provisions by allowing federal district courts to issue injunctions under limited circumstances that strengthen the arbitration process stressed in the Steelworkers trilogy.

4

119. If a labor dispute is subject to binding arbitration, and injunctive relief not otherwise precluded by Norris-La Guardia, a court must then decide whether it is appropriate to enter an injunction under the general standards governing preliminary injunctive relief. See District 17, United Mine Workers of America v. Apogee Coal Co., 13 F.3d 134 (4th Cir. 1993).

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) establishes the general standard for imposing preliminary injunctive relief. "That case requires parties seeking preliminary injunctions to demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013). In this circuit, to show the likelihood of success on the merits in the context of an arbitrable labor dispute, a party must "establish that the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor. If there is a genuine dispute with respect to an arbitrable issue, the barrier (to the issuance of an injunction)... has been cleared." Lever Brothers, 554 F.2d at 120 (internal quotations omitted).

Rule 65(c) of the Federal Rules of Civil Procedure provides that "the court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." As the Court of Appeals has stated—"an injunction bond posted in a Boys Markets case is payable only if the preliminary injunction is found to have been wrongfully issued, where, for example, the court erroneously issues a preliminary injunction over a labor dispute not covered by the grievance arbitration provisions of the contract." Lever Brothers, 554 F.2d at 120-121. The damages that are recoverable under such a bond "are those that arise from the operation of the injunction itself and not from damages

5

occasioned by the suit independently of the injunction." Id . The Court of Appeals considers the failure to require a bond before granting preliminary injunctive relief to be reversible error. See A & M Trucking Inc., 991 F.2d at 110.[2]

With the above precepts in mind the court concludes that it is appropriate to enjoin the Company from selling assets to Garten until arbitration is complete, conditioned on the posting of adequate security.

### A. Arbitrability

The court finds that the grievance and arbitration provision which applies to "differences" arising out of the interpretation or application of the CBA's provisions is broad enough and the successorship language of the agreement ambiguous enough that the court cannot say with "positive assurance" that the arbitration clause is not susceptible of an interpretation that covers the dispute at hand. In the words of the Fourth Circuit:

> [The court's] function, within the narrow ambit of Boys Markets and Lever Brothers, is to make a determination that the underlying issues *may* be arbitrable, and preserve the [s]tatus quo so that the arbitrators can first decide this preliminary issue, and then, if appropriate, decide the merits. When a collective bargaining agreement contains a mandatory arbitration clause, it reflects the parties' desire to arbitrate, not litigate, grievances.

Drivers, Chauffeurs, Warehousemen and Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc., 582 F.2d 1336, 1342 (4th Cir. 1978) (emphasis added) (affirming injunction to enjoin employer, who was in process of partially liquidating its business, from further encumbering capital assets pending resolution of arbitration of grievances filed by Union).

---

[2] Courts almost uniformly analyze or categorize injunctions such as the one sought by the Union here as preliminary injunctions, and the parties here have followed suit. The case law seems too well-settled for this court to do otherwise. Hence, the court applies the strictures of Rule 65 of the Federal Rules of Civil Procedure. But the injunction sought here, and others like it, are not in any meaningful sense preliminary to a merits base resolution in court. Indeed, as the Court of Appeals has made clear "courts must avoid reaching the merits of arbitrable disputes." See Akers Motor Lines, Inc., 582 F.2d at 1342.

## B. Norris-La Guardia

The court finds the circumstances here fall within the narrow exception to the application of the anti-injunction provisions of Norris-La Guardia because without an injunction a subsequently rendered arbitral award could not return the parties substantially to the *status quo ante*.[3] An arbitrator's decision finding the dispute subject to arbitration and within the scope of the successorship provisions of the CBA would be an exercise in futility after the sale is a *fait accompli*. The company essentially contends that this entire exercise is futile in any event because Garten does not intend to be unionized, will not assume the Company's obligations under the CBA, and cannot be leveraged by the withholding of the assets Garten purportedly intends to purchase, which are incidentally valued at no more than $250,000. All of this may be true, but the argument misses the point. Though arbitrability and application of the successorship provision are indeed debatable issues, that they are debatable places those issues before the arbitrator not the court, and it is no answer that enforcement of the successorship provision is weak leverage under current circumstances.

## C. Preliminary Injunction Standards

The Union has shown that:

---

[3] The parties submitted this case to the court on the declarations and exhibits submitted before the scheduled preliminary injunction hearing on August 16, 2013 and presented only arguments on that date. Section 7 of the Norris-La Guardia Act provides that:

No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, *except after hearing the testimony of witnesses in open court* (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered,....

29 U.S.C. §107 (emphasis added). Section 7, however, is inapplicable when an employer's conduct presents compelling circumstances such that without the injunction a subsequently rendered arbitral award "could not return the party substantially to the *status quo ante*." See A & M Trucking, 991 F.2d at 111 (recognizing Lever Brothers exception to § 7's application). And though cloaked in jurisdictional terms, courts have uniformly held that when applicable, § 7 is a remedial limitation not a limitation on the court's subject matter jurisdiction and is waivable. Though § 7 is inapplicable here, even if applicable the court would find that the Company waived its prohibitions.

1. It is likely to succeed on the merits as that requirement has been defined within the context of § 301 contract disputes. It has shown that its grievance concerning the Company's sale of assets to Garten does not raise so unsound an issue as to render arbitration a futile endeavor.

2. It is likely to suffer irreparable harm in that it will lose any economic leverage that would otherwise result from a favorable decision by the arbitrator.

3. On one side of the scale, if the injunction is granted, the Company may lose its opportunity to make the proposed sale to Garten, and on the other, if the injunction is not granted the Union may lose any economic leverage that might otherwise result from a favorable decision by the arbitrator. The potential hardship to the Company can be ameliorated by requiring the Union to post an appropriate bond. Any value in the CBA's arbitration and successorship provisions are likely lost without an injunction. Accordingly, the balance of hardships tips in the Union's favor.

4. There is nothing about the granting of an injunction to preserve the *status quo* in the circumstances before the court that conflicts with the public's interest.

### D. Bond

Evidence before the court indicates that the total value of the equipment is "$250,000 at most." Under the circumstances, the court concludes that damages and costs arising from a wrongfully issued injunction would not likely exceed that amount and that requiring security in that amount is appropriate.

## III.

The Court finds that an arbitrator might find the Union's grievance subject to binding arbitration, that injunctive relief is not otherwise precluded by Norris-La Guardia, and that it is appropriate to enter an injunction under the general standards governing preliminary injunctive relief. Consequently, the court will enjoin the Company from selling or otherwise transferring its assets to Garten pending the conclusion of arbitration, conditioned on the posting of security in the amount of $250,000. However, the court denies the Union's motion to compel expedited arbitration because "the parties [have] negotiated and agreed upon the present system of arbitration, with its built-in potential for delay." See Akers Motor Lines, Inc., 582 F.2d at 1343.[4]

**ENTER:** August 23, 2013.

UNITED STATES DISTRICT JUDGE

---

[4] The Union has filed a single grievance complaining of Team Carriers' "[f]ailure to require [the] new company to accept the [CBA] under Article I," the CBA's successorship provision. That grievance does not remotely challenge Team Carriers' sales to others not acting in concert with Garten (the company that is performing work that was performed by bargaining unit employees) nor, contextually would there be a plausible construction of the CBA for the arbitrator. Consequently, the court finds no basis for restraining all sales to others pending arbitration.